### STATE OF NEW JERSEY IN THE INTEREST OF F. M., JUVENILE.

Juvenile and Domestic Relations Court
Bergen County

January 11, 1979.

*Mr. Allan S. Gutfleish,* attorney for petitioner.

*Mr. Joseph Lewis Nackson,* attorney for juvenile.

*Mr. Nathan Kittner,* Assistant Prosecutor, for the State of New Jersey (*Mr. Roger W. Breslin, Jr.,* Bergen County Prosecutor, attorney).

MINUSKIN, P. J. J. D. R. C. This matter is before the court on a motion of the Englewood Board of Education (board) to vacate an order of this court placing the juvenile, F. M., in the Holmstead School and requiring the board to pay for her tuition. Said order was entered November 3, 1978, subsequent to an adjudication of juvenile delinquency and a disposition placing the juvenile under the care and supervision of the Division of Youth and Family Services (D. Y. F. S.) for appropriate placement. D. Y. F. S. subsequently recommended the Holmstead School as the most appropriate facility for F. M. The Holmstead School is a privately-owned special education institution.

The issue is whether this court has the authority to compel the Englewood Board of Education to provide funding for F. M.'s tuition at a privately-owned school.

F. M., a 16-year-old black or Hispanic girl, was abandoned at birth and cared for first by the New York Foundling Hospital and then by foster parents until her adoption almost a year later. She was adopted by white parents who had also adopted another child, a black male three years older than she. The parents encountered no problems with the boy but F. M. began to have difficulties at age 11. She performed poorly academically, cut classes and displayed a disrespectful and hostile attitude toward teachers and mother. At the same time she was found to have Crohn's Disease, a chronic form of ileitis, which requires constant medication.

The instant charges against F. M. arise from her conduct in the period from April 12, 1978 through June 2, 1978, and include charges of shoplifting, incorrigibility and two complaints of runaway from the J. I. N. S. shelter. A probation report ordered prior to disposition revealed that she associated with other juveniles who engaged in drug use and prostitution. Psychological and psychiatric reports indicated that she was socially maladjusted and emotionally disturbed and recommended placement by D. Y. F. S. Qualified psychologists and D. Y. F. S. caseworkers recommended a placement in Holmstead, an excellent privately-owned day school for emotionally disturbed children. Great emphasis was placed upon the fact that F. M. needed to be separated from her peers. Pursuant to that recommendation, F. M. was placed at Holmstead where she has improved dramatically.

Subsequent to the Juvenile Court's dispositional order on June 21, 1978, the Englewood Board of Education's Child Study Team also determined that F. M. was socially maladjusted and emotionally disturbed, qualified as educationally handicapped, and recommended that she be placed at the Village School in Rockleigh, a public special education facility operated by Bergen County. This court ordered a hearing on November 2, 1978, and ordered the Director of

Pupil Services for the Englewood School System to appear to assist the court in resolving the conflicting recommendations for placement. During that hearing it was determined that the Holmstead School was the most appropriate placement and that the Englewood Board of Education should provide the necessary tuition. The board subsequently moved to set aside the resulting order, contending that (1) the board had not been afforded due process in the order entered by the court; (2) the procedure for placement of the juvenile was governed by *N. J. S. A.* 18A:46-1 *et seq.* and the administrative rules and regulations adopted by the State Board of Education, to wit *N. J. A. C.* 6:28-1.1 *et seq.*, and (3) the court lacked the jurisdiction to order the board to subsidize tuition at a private school of which it disapproved.

The court has considered the board's contention that it was not afforded due process and finds it to be without merit. The board, through its Director of Pupil Services, appeared before the court on November 2, 1978 and subsequent thereto filed a motion in this court to have the resulting order vacated. In so doing the board did thereby submit itself to the jurisdiction of this court and, having been presented with an opportunity to be heard on the motion on January 11, 1979, waived its constitutional right to due process. *Cf. Mueller v. Eucenham,* 33 *N. J. Super.* 156 (App. Div. 1954); 67A *C. J. S. Parties* § 68 at 794-795.

The Juvenile and Domestic Relations Court may order an appropriate educational program for the juvenile as a disposition pursuant to *N. J. S. A.* 2A:4-61(i). The proper education of a child has always been of supreme importance and an objective which has long been pursued in our State. *State v. Vaughn,* 44 *N. J.* 142 (1965). *N. J. Const.* (1947), *Art.* VIII, § IV, *par.* 1 provides:

The Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the State between the ages of five and eighteen years.

Thus, it is clear that "the State's duty to educate children is a matter of constitutional demand." *Pingry Corp. v. Hillside Tp.*, 46 *N. J.* 457, 461 (1966) ; *Robinson v. Cahill*, 118 *N. J. Super.* 223 (Law Div. 1972), Supp. 119 *N. J. Super.* 40 (Law Div. 1972), mod. 62 *N. J.* 473 (1973), *cert.* den. 414 *U. S.* 976, 94 *S. Ct.* 292, 38 *L. Ed.* 2d 219 (1973). In enacting *N. J. S. A.* 18A :38–25 *et seq.,* the Legislature has implemented this demand by providing for the public education of every child within the State. Pursuant to *N. J. S. A.* 18A :38–25 the parent, guardian or other person having custody of every child is required to see to it that every child between the ages of 6 and 16 attends "the public schools of the district or a day school in which there is given instruction equivalent to that provided in the public schools for children of similar grades and attainments. * * *"

Nor may a thorough education be precluded by virtue of the fact that the child is either handicapped, imprisoned or otherwise involuntarily placed in a facility outside of the normal school environment. Thus, *N. J. S. A.* 18A :46–1 *et seq.* provides classes and facilities for handicapped children, and *N. J. S. A.* 18A :47–1 *et seq.* provides schools for dependent and delinquent children.

*N. J. S. A.* 2A :4–2 provides that the purpose of the "Juvenile and Domestic Relations Court Law" is to "secure for each child coming under the jurisdiction of the juvenile and domestic relations court such care, guidance and control, preferably in his own home, as will conduce to the child's welfare and the best interests of the state. * * *" The statute continues :

It is hereby declared to be a principle governing the law of this state that children under the jurisdiction of said court are wards of the state, subject to the discipline and entitled to the protection of the state, which may intervene to safeguard them from neglect or injury and *to enforce the legal obligations due to them* and from them. [Emphasis supplied]

The act is to be construed so as "to preserve the unity of the family whenever possible and to provide for the care,

protection and wholesome mental and physical development of juveniles coming within the provisions of the act." *N. J. S. A.* 2A:4–42; *R.* 5:2.

■ Accordingly, the Juvenile and Domestic Relations Court is clothed with exclusive jurisdiction in all cases where it is charged that a juvenile has committed an act of delinquency or is in need of supervision. *N. J. S. A.* 2A:4–46. The court is, in effect, mandated to exercise "the powers of the State as *parens patriae,* for the purpose of rehabilitating youthful offenders and not punishing them for the commission of a crime." *State in the Interest of D. B. S.,* 137 *N. J. Super.* 371, 375 (App. Div. 1975), certif. den. 70 *N. J.* 144 (1976).

Once there has been an adjudication of juvenile delinquency or of a juvenile in need of supervision, and prior to disposition, the court may refer the juvenile on an out-patient basis to a suitable public or private institution for examination, study and classification. *R.* 5:9–8. Upon receipt of the report of the examination the court shall dispose of the matter. *R.* 5:9–9. The court may, pursuant to *N. J. S. A.* 2A:4–61 or 2A:4–62 "(e) place the juvenile under the care of the Division of Youth and Family Services [or enter] (i) such other disposition not inconsistent with this act as the court may determine." See also, *R.* 5:9–9.

■ "The philosophy of the juvenile court law is aimed at rehabilitation through reformation and education in order to restore a delinquent youth to a position of responsible citizenship." *State v. Tuddles,* 38 *N. J.* 565, 571 (1963). See also, *In re Lewis,* 11 *N. J.* 217 (1953). Thus, it cannot be stressed strongly enough that education is an important aspect of, and in every instance should be provided for in the rehabilitative process. An attempt to make a disposition in a juvenile case without providing for education would clearly be a *non sequitur.* As hereinbefore stated, *N. J. S. A.* 2A:4–61(i) empowers the court to enter any disposition not inconsistent with the "Juvenile and Domestic Relations Court Act." Therefore, this court construes said

section as clothing it with the authority to order education for a child which it has previously ordered placed by D. Y. F. S. and, where D. Y. F. S. and other experts have recommended a specific program or facility, to order the recommended placement.

■ A court-ordered placement of a juvenile adjudicated delinquent or in need of supervision is not subject to the rules and regulations promulgated by the State Board of Education. Pursuant to the legislative mandate contained in *N. J. S. A.* 18A:46-1 *et seq.*, the Commissioner of Education, with the approval of the State Board of Education, is authorized to promulgate rules and regulations regarding, among other things, the identification, examination, classification and placement of handicapped children. It is the board's contention that inasmuch as the procedure for classification and placement of a handicapped child is governed by *N. J. A. C.* 6:28-1.1 *et seq.*, as authorized by *N. J. S. A.* 18A:46-1 *et seq.*, the court is obligated to follow and comply with those regulations. The court does not agree.

Nowhere in the rules and regulations of the administrative code is there any reference to court-ordered placements nor is the word "court" used or mentioned.

Further evidence that the Administrative Code was not designed to be applicable to court-ordered placements is the fact that some of the provisions contained therein are inconsistent with the statutes and rules governing the court. For example, *N. J. A. C.* 6:28-1.6 provides that the local child study team shall complete a comprehensive evaluation of the child leading to placement within 60 days, unless such time is extended by the Chief School Administrator. The court, on the other hand, must treat all placements on an emergent basis. Furthermore, *N. J. A. C.* 6:28-1.9(e) mandates that parental consent must be obtained before a school district may conduct a comprehensive evaluation or make initial placement of a pupil in a special education program. Parental consent is not required in a court-ordered placement. Finally, *N. J. A. C.* 6:28-1.9(i) and (j) pro-

vide a detailed review or appeals procedure through which a child's proposed placement may be challenged. Obviously, a determination by a court should not be subject to review and reversal by an administrative agency. The Legislature could not have intended the rules and regulations promulgated by the State Board of Education to be applicable to court-ordered placements.

The Juvenile and Domestic Relations Court may order a local board of education to subsidize the tuition of a juvenile domiciled in its municipality. Having determined that a juvenile has a constitutional right to a thorough education and that the Juvenile and Domestic Relations Court may order a juvenile placed in an appropriate facility that will provide such education, it must follow that this court has the power to order a local board of education to subsidize the tuition at the particular facility. *N. J. S. A.* 2A:4–61(i). A contrary ruling would result in the court issuing what would in effect be unenforceable orders.

The State is under an obligation to provide an education for each and every child and must therefore provide the funds for said education. This is accomplished by extending funds to the individual boards of education and having the local boards wherein the juveniles reside make the necessary payments. *N. J. S. A.* 18A:4–1 *et seq.* provides for the education of "handicapped children," and *N. J. S. A.* 18A:46–14 provides for the tuition costs to be the responsibility of the local board of education in which the child is domiciled. *Little Egg Harbor Tp. Bd. of Ed. v. Boards of Ed.,* 145 *N. J. Super.* 1 (App. Div. 1975), *mod.* 71 *N. J.* 537 (1976), interpreted those sections and concluded that the school board in which the juvenile was domiciled is responsible for the tuition costs. It was stated:

*Chapter* 46 of *Title* 18A, which makes provision for classes and facilities for "handicapped children", a term defined to include any "emotionally disturbed" or "socially maladjusted child" (*N. J. S. A.* 18A:46–2), is clearly applicable to A. S. who was diagnosed as being emotionally disturbed and socially maladjusted. *N. J. S. A.* 18A:46–

14 provides that tuition costs for specially placed handicapped child shall be borne by the "board of education of the district in which the child is domiciled." With this conclusion both the Commissioner and the majority of this court agree. [145 *N. J. Super.* at 11]

So do I.

Based upon the facts in the instant case, the aforesaid statutes are clearly applicable to F. M. who was diagnosed as emotionally disturbed and socially maladjusted, and the local board of education is responsible for the payment of F. M.'s tuition costs. Consequently, whenever a placement is made in which education is a necessary element of the court order, the local board of education must and can be ordered to bear the cost.

It was argued by the board of education that compliance with the rules and regulations embodied in the Administrative Code is a prerequisite to reimbursement by the state. No doubt difficulty may be encountered in the local board of education's application for reimbursement. Nevertheless, whatever the outcome, this court is primarily concerned with the best interests and welfare of the child which it concludes supersedes the pecuniary interest of the local board of education. *N. J. S. A.* 2A:4–2.

Petitioner's motion to vacate the order of the court is hereby denied.